UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| POLLY A. REED, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 1:14-CV-080 JD |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## **OPINION AND ORDER**

Plaintiff Polly A. Reed was involved in a motorcycle accident on June 20, 2010. She experienced trauma to her left leg, which she asserts left her permanently unable to work, so she filed a claim for social security disability insurance benefits. The Commissioner of Social Security disagreed, finding after a hearing before an Administrative Law Judge that Ms. Reed still had the ability to return to her past work or to perform other jobs, so it denied her claim. Ms. Reed now seeks review of that decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court affirms the Commissioner's decision.

## I. FACTUAL BACKGROUND

Ms. Reed was a passenger on a motorcycle that was hit by a car on June 20, 2010. She suffered a fractured left tibia, and had surgery to insert a rod in her ankle. She also suffered open wounds over her left knee and leg, and underwent skin grafts to treat those injuries. She was hospitalized for eleven days. Her condition gradually improved, though she continued to experience pain, and her treating orthopedist cleared her to return to work on November 11, 2010. On June 2, 2011, Ms. Reed filed an application for Disability Insurance Benefits, alleging that she became disabled on June 20, 2010 due to the injuries she suffered on that date to her

ankle, leg, and knee, in addition to the high blood pressure, depression, and anxiety that she also experienced. After denying Ms. Reed's application initially and upon reconsideration, the Commissioner held a hearing before an Administrative Law Judge on September 7, 2011. Ms. Reed testified at the hearing, as did an impartial vocational expert.

The ALJ issued her decision on Ms. Reed's claim on January 10, 2013. Proceeding through the five steps, the ALJ first found that Ms. Reed had not engaged in substantial gainful activity since her alleged onset date. She then found at step two that Ms. Reed had severe impairments, consisting of "residuals of a June 20, 2010, motorcycle accident . . . ." (R. 14). At step three, the ALJ found that Ms. Reed did not meet or equal any listing, so she then formulated Ms. Reed's Residual Functional Capacity as follows: "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 414.157(b) except she can never climb ladders, ropes and scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl." (R. 16). Based on that RFC and the testimony of a vocational expert, the ALJ found at step four that Ms. Reed was capable of performing her past relevant work. The ALJ also considered step five, and found that Ms. Reed was able to perform jobs that exist in significant numbers in the national economy. On the basis of the step-four and step-five findings, the ALJ concluded that Ms. Reed had not been under a disability from June 20, 2010, through the date of the decision. (R. 22). The Appeals Council denied Ms. Reed's request for review, so the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Ms. Reed timely filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of

3

evidence in support of the factual findings. *Binion ex rel Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work

under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Reed raises four arguments in support of her claim that the ALJ erred in denying her benefits. Two of her arguments relate to the ALJ's credibility analysis, in that she asserts the ALJ improperly overemphasized her daily activities and also failed to adequately consider her work history. Ms. Reed also argues that the ALJ failed to incorporate the limiting effects of her neck and shoulder impairments into her RFC, and did not consider the combined impact of all of her impairments. Last, Ms. Reed argues that even if she was not disabled as of the date of the ALJ's decision, she was disabled for at least a 12-month period after her injury, so the ALJ should have awarded her benefits for that closed period. The Court addresses each argument in turn.

**A.     Credibility**

First, Ms. Reed argues that the ALJ committed reversible error in discounting her credibility. Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)). However, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

In arguing that the ALJ improperly discounted her credibility, Ms. Reed first argues that the ALJ overemphasized her daily activities by failing to acknowledge that she had to take rests during the day. However, this argument patently misreads the ALJ's decision, which referenced

5

Ms. Reed's rest periods multiple times. The ALJ first noted Ms. Reed's daily activities during her step-two analysis, where she stated, "The claimant and her husband both reported that she has no problem with personal care (Exhibits 3E and 4E). Consistent with the information in the reports, the claimant testified that she cooks daily and does household chores but needs to take breaks due to her alleged physical impairments." (R. 15). The ALJ next addressed Ms. Reed's daily activities during her recitation of Ms. Reed's testimony at the hearing. The ALJ noted Ms. Reed testified that she "can stand for 20 minutes as long as she mostly stands on her good leg and then must sit down because she gets tired" and that she "can walk for four to five minutes with her cane before she has to rest." (R. 16–17). The ALJ continued, noting that on a typical day, Ms. Reed:

> [H]elped her husband who is an amputee from the motorcycle accident get ready for work; did dishes; *rested* and watched television; and then did housework including vacuuming, sweeping and dusting *resting 15 to 30 minutes in between rooms*. One the housework was done, the claimant said that she watched television and checked Facebook on the computer to see what her friends were up to. She indicated that she started dinner at 3 and then after dinner she watched her husband work on their motorcycle . . . . After her husband worked on the motorcycle for half an hour, the claimant indicated that they watched television when they returned to the house and then went to bed at 9 p.m.

(R. 17 (emphases added)). Given this discussion, Ms. Reed is simply mistaken in arguing that the ALJ "glosse[d] over" the fact that she rested throughout the day and engaged in low-exertional activities.

In addition, Ms. Reed never actually articulates how she believes this alleged error affected the ALJ's analysis. In fact, it does not appear to the Court that the ALJ relied on Ms. Reed's daily activities at all in discounting her credibility or finding that she was not disabled. The ALJ's decision never states that Ms. Reed's testimony or any other limitations in the record were inconsistent with her daily activities. Nor does it suggest that the ALJ extrapolated from Ms. Reed's daily activities that she must have been able to work full time. Accordingly, the

6

Court cannot find that the ALJ improperly considered Ms. Reed's daily activities in any manner that would undermine the decision.

Second, Ms. Reed argues that the ALJ erred in her credibility analysis by failing to adequately consider Ms. Reed's work history. Ms. Reed's brief states, "[t]he ALJ does **not** mention or analyze Plaintiff's excellent work history," [DE 17 p. 15 (emphasis in original)], but, again, that is inaccurate—the ALJ discussed Ms. Reed's work history at multiple points in the decision. In considering whether to include any limitations due to Ms. Reed's cognitive abilities, the ALJ noted, "the claimant's earnings records show that she worked above the level of substantial gainful activity at semi-skilled jobs up until the time of her accident." (R. 20). Then, at the step-four analysis, which looks at whether a claimant is able to perform her past relevant work, the ALJ extensively considered Ms. Reed's work history. She discussed that Ms. Reed worked as a molder, which she performed at the light exertional level; a machine tender, which she performed at the light exertional level; and a short order cook, which she performed at the medium exertional level.[1] (R. 20). Therefore, Ms. Reed's statement that the ALJ did not even mention her work history is simply incorrect.

Thus, what remains of Ms. Reed's argument is only that the ALJ did not give this evidence the weight Ms. Reed would like in evaluating her credibility. Citing *Springer v. Colvin*, No. 1:13-cv-185-WCL, 2014 WL 3075342, at *8 (N.D. Ind. July 2, 2014), Ms. Reed contends that she was "entitled to substantial credibility" due to her work history. [DE 17 p. 15]. In *Springer*, the plaintiff had worked for years even while suffering from substantial health problems, which the ALJ relied on to conclude that the plaintiff's limitations must not be

---

[1] Since her past work was at the light and medium exertional levels, Ms. Reed's statement that she "labored at arduous work almost her entire life" appears quite overstated. [DE 17 p. 14].

disabling. *Id.* at \*7. After noting that the "case is being remanded anyway," the court criticized the ALJ for using the plaintiff's "'can do' attitude" against him and suggested that the ALJ reconsider that aspect of the analysis on remand. *Id.* at \*8. As multiple other courts in this district have observed, though, "there is no requirement to give 'substantial credibility' to a disability claimant with a good work record." *Loveless v. Colvin*, No. 4:14-cv-36-JVB, 2015 WL 1608808, at \*4 (N.D. Ind. Apr. 10, 2005); *see also Stark v. Colvin*, No. 1:14-cv-108-JVB, 2015 WL 1780066, at \*2 (N.D. Ind. Apr. 17, 2015) ("[T]he ALJ was not required to single out Plaintiff's work history as a substantial factor in favor of her credibility."); *Hill v. Colvin*, No. 1:13-cv-331-RL, 2014 WL 6984349, at \*13 (N.D. Ind. Dec. 10, 2014) (rejecting the plaintiff's argument that the ALJ erred by failing to consider her work history in support of her credibility). In addition, unlike the plaintiff in *Springer*, there is no indication that Ms. Reed had to overcome any health limitations during the time period that she worked—she does not claim to have had any limitations prior to her motorcycle accident, and she has not returned to work since that date. *Springer* thus offers Ms. Reed little support, and the ALJ did not err in declining to single out Ms. Reed's work history in support of her credibility.

To the contrary, the Court finds that the ALJ's analysis of Ms. Reed's credibility was adequately supported and was not patently wrong. Notably, other than the general objections above, Ms. Reed does not identify any particular statements that the ALJ did not credit but should have. In fact, there is rather little of consequence that Ms. Reed testified to or stated in the records that the ALJ did not accept. Ms. Reed testified that she used a cane a few times a day, (R. 31), and the ALJ did not include such a limitation. In explaining why, the ALJ stated, "Despite the claimant's allegation that she needs a cane, as discussed above, Dr. Smith's most recent examination findings indicate that the claimant's gait is stable and without an assistive device

and Dr. Wright's treatment records do not mention either the use of or a need for a cane." (R. 19). That explanation mirrored the ALJ's previous, more general comment that Ms. Reed's statements were "not entirely consistent with or supported by the medical and other evidence," and provided a valid reason for omitting such a limitation. (R. 17).

Ms. Reed also testified that she could walk for four to five minutes before resting, which the ALJ did not include in the RFC. However, the ALJ noted multiple times that Ms. Reed's gait and station were observed as normal during office visits, and she also gave significant weight to the reviewing physicians' assessment, which did not include such a limitation, which shows the ALJ's logic in that respect. In addition, Ms. Reed testified that she could sit for 15 minutes, after which she would stand for up to 20 minutes at a time, and the ALJ did not include a sit/stand option in the RFC. However, the ALJ expressly found, based on testimony by the vocational expert, that Ms. Reed would not be disabled even if she had such a limitation, so omitting that limitation could not have impacted the ALJ's conclusion as to whether Ms. Reed was disabled. (R. 19). The Court cannot find that any of these explanations were patently wrong, as would be required to reverse the ALJ's credibility assessment, so it rejects Ms. Reed's credibility arguments as bases for granting relief.

**B.     Neck and Shoulder and Other Impairments**

Ms. Reed next argues that the ALJ failed to adequately consider and incorporate limitations relative to her neck and shoulder conditions in the RFC. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not

9

provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Here, Ms. Reed first complained of pain in her neck and arm in August 2012, which was over two years after her alleged onset date, and less than a month before the administrative hearing. There is thus comparatively little evidence in the record about these conditions or about what limitations they may impose on Ms. Reed's ability to work. At an appointment with Dr. Wright on August 30, 2012, x-rays of Ms. Reed's spine and shoulders showed "minimal spondylosis at C5 and C6" and "mild glenohumeral degenerative joint disease." (R. 18, 387). A treatment note from September 12, 2012, also references cervical stenosis and radiculitis among Ms. Reed's diagnoses. After reviewing the relevant evidence, the ALJ found that any limitations Ms. Reed experienced based on these conditions would be covered by limiting her to light work, which the ALJ had already imposed for Ms. Reed's leg conditions. Ms. Reed argues that the ALJ's explanation of this finding was insufficient, but the Court disagrees, as the ALJ's discussion of the evidence allows the Court to trace her reasoning to this finding.

Specifically, as the ALJ noted, Ms. Reed's testimony at the hearing was that she "had a sore spot on her right arm." (R. 17, 45). She did not testify that this soreness caused any particular limitations. Likewise, there is little indication in the medical records as to the extent of any limitations these conditions imposed, and none of the doctors ever gave Ms. Reed any work-related limitations for these conditions.[2] The primary findings were that Ms. Reed experienced

---

[2] Ms. Reed does not argue, and thus the Court does not consider, whether the ALJ should have sought further input from medical sources as to any limitations caused by these conditions.

pain with certain movements, such as extension and right rotation of the cervical spine or resistive wrist extension. However, Ms. Reed also testified at the hearing that when she took her pain medications—the only side effect of which was dry mouth—her pain went from four or five out of ten to one out of ten. (R. 17). Thus, given the limited evidence of any limitations and the ALJ's consideration of the pertinent evidence, the Court finds that the ALJ did not err in declining to impose any additional limitations based on these conditions.

Furthermore, the ALJ offered a second reason why these limitations would not need to be included in the RFC. Specifically, she found that "[t]here is no indication in the evidence that these [neck and arm] issues will be durational, i.e., lasting for twelve continuous months . . . ." (R. 14). As the ALJ discussed in connection with the RFC, Ms. Reed testified that she had been experiencing neck and arm pain only for the last two months. In addition, the last medical record submitted to the ALJ (which was from the same day as the hearing) occurred only three weeks after Ms. Reed first reported these symptoms to her doctor.[3] Because a claimant must be unable to work "for a continuous period of not less than 12 months" in order to receive disability benefits, 42 U.S.C. § 423(d)(1)(A), this finding presents an independent reason why the ALJ need not have included these limitations in the RFC. *See also* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). If, as the ALJ found, Ms. Reed was not disabled before the neck and arm conditions, and those impairments could not be expected to last at least 12 months, then Ms. Reed will not have met the durational requirement. Ms. Reed does not address this finding or present any argument as to why the Court should upset it, so the Court

---

[3] The underlying conditions are likely not the sort of things that go away, but this inquiry is concerned with the duration of the limitations imposed by those conditions, not the conditions themselves. *Barnhart v. Wilson*, 535 U.S. 212, 217–23 (2002).

11

finds for both of those reasons that the ALJ did not err in declining to include additional limitations in Ms. Reed's RFC for her neck and arm conditions.

Ms. Reed also makes a cursory and undeveloped argument that the ALJ failed to properly consider the limiting effects of her hypertension, urge incontinence, and hematuria, and thus did not consider the combined effects of all of her impairments, as required. The Court finds that any argument on this topic is waived for failure to even minimally develop and support the argument. Regardless, there is no evidence in the record that any of those conditions imposed any limitations whatsoever on Ms. Reed's ability to work, so there was nothing for the ALJ to consider in that respect, and this would not have presented a basis for relief.

**C.     Closed Period of Disability**

Finally, Ms. Reed argues that the ALJ erred by failing to consider whether she had been disabled for a closed period of at least 12 months, even if she was not still disabled by the time of the ALJ's decision. A claimant need not be disabled as of the date of the hearing or of the ALJ's decision in order to qualify for disability benefits. *Masso v. Colvin*, No. 1:14-cv-4250, 2015 WL 3687106, at *6 (N.D. Ill. June 10, 2015); *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013) ("It is a fundamental principle in social security jurisprudence that a claimant does not need to have a *current* disability to qualify for benefits."); *Brown v. Massanari*, 167 F. Supp. 2d 1015, 1016–17 (N.D. Ill. 2001). Rather, a claimant is entitled to disability benefits if they were disabled for any continuous period of at least 12 months. *Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309, at *14 (N.D. Ill. Nov. 18, 2010); 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months"). Therefore, even if an ALJ finds that a claimant is not disabled as of the date of the decision, they must still consider whether the claimant was

unable to engage in substantial gainful activity for any continuous period of at least 12 months since the alleged onset date.

Here, Ms. Reed argues that the ALJ erred by failing to consider the possibility of a closed period of disability, and that she should have awarded benefits at least from June 20, 2010, the date of her accident, through November 18, 2011, when an x-ray showed stable healing of the fracture. Ms. Reed is correct insofar as she notes that the ALJ's decision does not contain an express statement that she separately considered and rejected a closed period of disability. However, after defining "disability" as the inability to engage in any substantial gainful activity by reason of any impairments that "ha[ve] lasted or can be expected to last for a continuous period of not less than 12 months," the ALJ found that Ms. Reed "has not been under a disability within the meaning of the Social Security Act from June 20, 2010, through the date of this decision." (R. 12). Thus, the ALJ did find, at least implicitly, that Ms. Reed had not been disabled for a continuous period of at least 12 months during that timeframe. In addition, the decision's discussion of the evidence in support of the RFC finding makes abundantly clear that the ALJ found the RFC to be in effect well within the 12-month period after Ms. Reed's injury, as she relied substantially on evidence from within that period. And because the ALJ found that the limitations in the RFC were not disabling for Ms. Reed, it necessarily follows that the ALJ concluded that Ms. Reed was not disabled for a period of at least 12 months following her injury.

The ALJ began her discussion of the medical evidence by stating, "Although the claimant suffered severe injuries to her left leg as a result of her motorcycle accident, the medical evidence does not support her allegations that the residuals from her injuries continue to cause disabling limitations." (R. 17). On its own, this statement is ambiguous as to how long the ALJ believed the limitations continued, but the ALJ then stated, "In fact a November 10, 2010,

13

orthopedic re-check note [by Dr. Wright, Ms. Reed's treating orthopedist] stated that the claimant could return to work on November 11, 2010, with regular duties 20 weeks after her left knee debridement and placement of the rod in her tibia." (*Id.*) The ALJ also noted from that treatment note that the examination included normal findings and full left ankle strength, and that the x-ray showed that the fractures were healing well.

The ALJ continued her discussion of the evidence by noting a number of other medical records that were dated within the first 12-month period after Ms. Reed's injury. Ms. Reed's next appointment after November 10, 2010, was on April 18, 2011 with Dr. Smith, her primary care physician, during which Ms. Reed reported pain in her ankle. Dr. Smith's examination findings included minimal edema in Ms. Reed's left leg and a slow gait assisted by a cane, and Dr. Smith referred Ms. Reed to a podiatrist, Dr. Bussema. Ms. Reed met with Dr. Bussema on April 22, 2011. He noted some decreased range of motion, but also noted that the x-rays were normal and that the neurological and dermatological findings were normal. The ALJ further noted that Ms. Reed did not see Dr. Bussema again after receiving the custom orthotics from him, which occurred on June 10, 2011—still within the first 12-month period. (R. 350). In addition, Ms. Reed returned to Dr. Smith again on June 17, 2011 (also within the 12-month period), complaining only of stress and depression. The ALJ noted that Dr. Smith's musculoskeletal examination findings were normal and that Ms. Reed's gait and station were normal. (R. 18, 311). The ALJ also gave significant weight to the State agency reviewing physicians' residual functional capacity assessments. The first of those assessments, by Dr. Sands, was signed on July 18, 2011, just after the 12-month period. (R. 381). However, Dr. Sands' assessment was based

entirely on records from within the first 12 months after the accident.[4] Thus, by giving Dr. Sands' assessment significant weight and by adopting an identical RFC, the ALJ clearly found that this RFC had taken effect before the conclusion of the 12 month period.

Further, although the ALJ also cited several records from outside the initial 12-month period, the ALJ did not cite any material improvements after that period that would suggest the RFC would have changed. In fact, Ms. Reed argues that the closed period of disability should extend until November 18, 2011, because an x-ray taken on that date showed that her ankle was stable. Yet, an x-ray taken over a year earlier on November 10, 2010 (when Ms. Reed's doctor cleared her to return to work), contained similar findings (R. 17–18, 321), as did another one taken on April 29, 2011 (R. 18, 346). And as noted, the reports of the two agency reviewing physicians, on which the ALJ placed significant weight, both predated November 18, 2011, so there is no question that the ALJ believed the RFC was in effect well before that date. The only evidence the ALJ cited from after the first 12-month period that might have represented an improvement in Ms. Reed's leg conditions was that on August 22, 2012, Dr. Smith noted that Ms. Reed was walking without an assistive device, whereas previous notes by Dr. Smith mentioned that she was using a cane. However, the ALJ also noted that Dr. Wright, the orthopedist, had never prescribed or mentioned the use of a cane. And the reviewing physicians did not recommend any limitation for requiring an assistive device, so there is no reason to believe that Dr. Smith's later note affected the RFC.

---

[4] Ms. Reed had only one doctor's visit between June 20, 2011—the anniversary of the accident—and the date Dr. Sands completed his report on July 18, 2011, and the Commissioner did not request those records until August 25, 2011, so Dr. Sands could not have considered them in his assessment. (R. 354, 358). In any event, the ALJ's description of these records was that the musculoskeletal findings "were again normal," (R. 18), indicating that they would not have altered the ALJ's findings as to the initial 12-month period.

These facts distinguish this case from others in which courts in this circuit have reversed due to the ALJs' failures to consider a closed period of disability. In *Brown*, for example, the ALJ had relied heavily on a doctor's opinion from nearly three years after the alleged onset date. 167 F. Supp. 2d at 1020. Likewise, the ALJ's conclusion in *Calhoun* was "based in substantial part on extremely recent evidence." 959 F. Supp. 2d at 1075. In both cases, it was thus unclear whether the ALJ would have found the same limitations during previous periods that may have justified a closed period of disability. Conversely, in *Fleming v. Astrue*, 448 F. App'x 631, 634 (7th Cir. 2011), the Seventh Circuit found that the ALJ had adequately considered a closed period of disability where they relied on medical records and an assessment by a state-agency physician from within the proposed period of disability. And in *Schumacher v. Barnhart*, 196 F. Supp. 2d 716, 724 (N.D. Ill. 2002), the ALJ cited substantial evidence from within the proposed period in formulating the RFC, and the claimant's condition had not materially changed over time, so the ALJ's rejection of a closed period of disability was appropriate.

Here, as just discussed, the ALJ relied substantially on evidence and opinions from within the first 12 months after Ms. Reed's accident. There is also no indication in the record suggesting that her limitations changed materially over the time period covered by the ALJ's discussion, which commenced about five months after the accident when Ms. Reed's treating physician cleared her to return to work. Therefore, even absent an express statement from the ALJ as to when the RFC took effect, it is clear that she believed that the RFC was in effect before 12 months had passed after the accident. Since a claimant must be disabled for a continuous period of at least 12 months in order to qualify for disability benefits, Ms. Reed was thus ineligible for benefits, and the ALJ did not err by declining to award at least a closed period of disability.

## IV.  CONCLUSION

The Court finds that the Commissioner's decision was supported by substantial evidence and was adequately reasoned, so the Court AFFIRMS the Commissioner's denial of Ms. Reed's claim for disability benefits. The Clerk is DIRECTED to enter judgment in favor of the Commissioner.

SO ORDERED.

ENTERED:  August 18, 2015

                                          /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court